**UNITED STATES of America, Plaintiff,**

v.

**Roy Lee GILLIAM, Defendant.**

**Crim. No. 90–0007–B.**

United States District Court,
W.D. Virginia,
Big Stone Gap Division.

Sept. 22, 1993.

---

Julie M. Campbell, Asst. U.S. Atty., Abingdon, VA, for plaintiff.

Donald E. Earls, Norton, VA, for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

GLEN M. WILLIAMS, Senior District Judge.

This case is again before the court pursuant to a remand by the United States Court of Appeals for the Fourth Circuit. The mandate of the Fourth Circuit directs this court to hold an evidentiary hearing to determine whether or not the conflict created by defense counsel's (Rasnic) representing two defendants, father and son, "impaired the ability of Mr. Rasnic to advise Roy Lee [Gilliam] independently of the merits of the plea arrangement" which Roy Lee and his father, Elic Gilliam, had been offered. *United States v. Gilliam*, 975 F.2d 1050, 1054 (4th Cir.1992) (citing *Cuyler v. Sullivan*, 446 U.S. 335, 348, 100 S.Ct. 1708, 1718, 64 L.Ed.2d 333 (1980).

Prior to the evidentiary hearing, conducted pursuant to the Fourth Circuit's remand, this court had not held a Rule 44(c) hearing. The court has now conducted the evidentiary hearing, including testimony from Roy Lee Gilliam, his attorney Tom Rasnic, and Jerry Kilgore, former Assistant United States Attorney. The court now issues its findings of fact and conclusions of law.

A brief overview of the facts in this case are as follows. Roy Lee and his father were co-defendants and tried in this court on charges of money laundering and drug trafficking. Both Roy Lee and Elic were represented by Rasnic. Several days after the trial began, the government orally communicated a plea agreement to Rasnic. Rasnic urged both Roy Lee and his father to take the plea agreement, but the defendants decided to continue with the trial. Both Roy Lee and his father were convicted of criminal charges and sentenced.

After his conviction, Roy Lee was advised by an attorney in Oregon, where other charges were pending, that there might have been a conflict of interest due to joint representation by Rasnic. Thus, it was not until after his conviction that Roy Lee first raised his claim for ineffective assistance of counsel due to a conflict of interest.

## ANALYSIS

"In order to establish a violation of the Sixth Amendment, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." *Cuyler v. Sullivan*, 446 U.S. 335, 348, 100 S.Ct. 1708, 1718, 64 L.Ed.2d 333 (1980). Thus, "until a defendant shows that his counsel *actively represented conflicting interests*, he has not established the constitutional predicate for his claim of ineffective assistance [of counsel]." *Id.* at 350, 100 S.Ct. at 1719 (emphasis added). Also, "the possibility of conflict is insufficient to impugn a criminal conviction." *Id.; United States v. Tatum*, 943 F.2d 370 (4th Cir.1991) (citing *Cuyler v. Sullivan*, 446 U.S. 335, 350, 100 S.Ct. 1708, 1719, 64 L.Ed.2d 333 (1980)). *See also, Beets v. Collins*, 986 F.2d 1478 (5th Cir.1993), *reh'g granted*, 998 F.2d 253 (5th Cir.1993) (requiring a showing that an attorney actively represented conflicting interests "stems from the concern that potential conflicts will be dressed up as Sixth Amendment violations"). It is not necessary to establish prejudice as a showing of prejudice is presumed where a conflict of interest actually affected the adequacy of representation. *Cuyler v. Sullivan*, 446 U.S. 335, 349–50, 100 S.Ct. 1708, 1719, 64 L.Ed.2d 333 (1980) (citing *Holloway v. Ar-*

*kansas,* 435 U.S. 475, 487–91, 98 S.Ct. 1173, 1180–82, 55 L.Ed.2d 426 (1978)).

As directed by the Fourth Circuit, this court will first address whether there was ineffective assistance of counsel in advising Roy Lee regarding the plea arrangement. This court will then address whether there was ineffective assistance of counsel at trial. Although the Fourth Circuit did not direct that the second issue be addressed, this court will address that issue in order to establish its findings in that regard.

## I. Ineffective Assistance of Counsel in Plea Bargaining

On or about the third day of the trial (which lasted eight days), the government made an offer to the defendants that upon a plea of guilty by both defendants, it would recommend to the court that Elic serve ten years and that Roy Lee serve seven years in prison. (T at 24)[1]. There is no evidence as to which side initiated the guilty plea discussions, and apparently, it was never reduced to writing. The offer, however, remained open until the close of the government's evidence. (T at 37).

Jerry Kilgore, government prosecutor, testified that this offer was a joint offer made to completely end the trial. (T at 24). Kilgore further testified that the government would never have made separate plea offers in this case for two reasons. First, the purpose of the government's plea offer was to completely end the trial, not to continue against only one defendant. (T at 24). In fact, the case was strong against both Roy Lee and Elic and there was no need to offer a deal to one defendant. (T at 27–29). Second, Kilgore testified that it was against his policy to offer separate deals where co-defendants were father and son. (T at 28–29). Kilgore further testified that he believed that this was not the type of case where the government would have plea-bargained with one defendant to get him to testify against the other. (T at 28–29). Accordingly, it appears that regardless of who represented Roy Lee, Kilgore

would not have offered or accepted a separate plea agreement on behalf of Roy Lee.

Rasnic testified he understood that the plea offer was being made to Roy Lee and Elic jointly, although the government never explicitly related that the agreement was "joint." (T at 36). According to Rasnic, he believed the agreement to be joint because the government had strong cases against both Roy Lee and Elic, Kilgore never made separate plea offers, and neither of the defendants raised the issue of separate plea agreements. (T at 36–38). Also, Rasnic testified that he believed that the government's offer remained open until the close of the government's case. (T at 37).

Roy Lee testified that he never understood, one way or the other, whether the offer was a joint or separate offer. (T at 11, 19). He also testified that he wanted to take the plea agreement but was pressured to continue with the trial by his father, who advised that they stick together at trial. (T at 7–8). Thus, not understanding that the agreement was an all-or-nothing offer, Roy Lee testified that he would have accepted the agreement if he had been advised by independent counsel. (T at 7–8).

Rasnic strongly urged Roy Lee and Elic to accept the plea agreement. (T at 44). Rasnic referred to the agreement as a "mighty fine deal." (T at 34). Rasnic, further, testified that he explained to the Gilliams why the deal would be beneficial and instructed them to go home at night and discuss the matter. (T at 44). Rasnic stated that he had numerous discussions with Roy Lee and Elic throughout the trial, however, Roy Lee never insisted that he get a separate attorney. (T at 38). Likewise, Roy Lee testified that he never insisted that he, alone, plead guilty "because my father didn't want it. . . . I was brought up when dad tells you something, you know, you go with he is my father, he knows best." (T at 23). According to Roy Lee, he listened to his father because his father "felt that we could win this case if we would stay together." (T at 13). Roy Lee, further, stated that he and his father dis-

---

**1.** References to the transcript of the March 18, 1993, evidentiary hearing, held pursuant to remand, are cited "(T at ——)."

cussed the plea agreement and jointly decided not to accept it. (T at 20).

■ In the absence of an objection at trial, a defendant must show that an actual conflict adversely affected his lawyer's performance. *Cuyler v. Sullivan*, 446 U.S. 335, 348, 100 S.Ct. 1708, 1718, 64 L.Ed.2d 333 (1980). The *Cuyler* test requires two elements be established: (1) there must be an actual conflict; and (2) that conflict must have adversely affected Rasnic's ability to negotiate the plea agreement on behalf of Roy Lee. According to the facts of this case, there was neither an actual conflict of interest, nor was Rasnic's ability to negotiate on behalf of Roy Lee affected in any way. In conducting our analysis of the facts in this case under the *Cuyler* test, the analysis of the two elements may overlap as the elements, themselves, are "intertwined." *Tatum*, 943 F.2d at 375.

With regard to the negotiations surrounding the offer of the joint plea agreement, the agreement was not presented in a way which would give rise to a conflict of interest. Just as the theories of defense for the Gilliams were exactly the same, to-wit, a denial of everything, the issue of whether to accept the plea agreement involved identical considerations by Roy Lee and Elic. That is, each had to decide whether to accept the plea and forego the rest of the trial or whether to reject the plea and take their chances at trial. Neither Roy Lee nor Elic was faced with the possibility of being able to better his own position by implicating his co-defendant because each contended that the other was innocent.[2]

This agreement was a joint agreement which could only be accepted if *both* Roy Lee and Elic agreed to plea. (T at 25). Rasnic's role, as advisor and advocate, was essentially the same for Roy Lee as for Elic—Rasnic was advising both to accept the offer while presenting both not guilty at trial. Even if Rasnic had advised only Elic, and not Roy Lee, as to the merits of the plea agreement,[3] Roy Lee testified that he and Elic discussed the plea agreement between the two of them and jointly decided to reject the agreement. (T at 20).

Roy Lee testified that Rasnic never explained that the offer could only be accepted if both he and his father agreed to plea. (T at 21). This court does not condone Rasnic's failure to fully relate the joint nature of the plea agreement to Roy Lee. However, Roy Lee's confusion regarding whether he, alone, could have accepted the plea agreement does not change the nature of the offer.[4] Regardless of whether Roy Lee understood the offer, he, alone, could not have accepted the plea agreement. (T at 26–28). It does not matter whether separate counsel would have advised Roy Lee differently because Roy Lee's having separate counsel would not have changed the joint nature of the agreement.

Further, the government testified that the purpose of the offer was to completely end the trial. (T at 24). The government did not desire to proceed against only one defendant. (T at 25, 28–29). The government's offer remained open until the close of the government's case, evidencing that the agreement

2. The present case should be distinguished from that of *Hoffman v. Leeke*, 903 F.2d 280 (4th Cir.1990). In that case, one attorney represented two co-defendants, Hoffman and Moose. However, the attorney advised Moose to give a statement implicating Hoffman and to testify against Hoffman as part of a plea agreement. The *Hoffman* court stated: "[i]t is difficult to understand, and indeed we do not, how advising one client to give a statement and testify to the essential elements of a crime allegedly committed by a second client is not a conflict of interest." *Hoffman* at 286.

3. There was certain testimony produced at the hearing which indicated that Rasnic primarily dealt with and advised Elic. Roy Lee testified that he never spoke to Rasnic alone and that his father counselled him regarding the agreement. (T at 7). Also, Rasnic stated that he never spoke to Roy Lee without Elic being present (T at 48). Rasnic further stated that he often directed the conversation to Elic because Elic was "calling the shots." (T at 35).

4. It is important to note that even Rasnic may have been confused as to this point. Rasnic testified at the hearing that once the plea offer was made he sensed "that Roy Lee was not freely exercising whatever rights he might have" as Roy Lee wanted to accept the plea but Elic did not. (T at 40). Rasnic's analysis is incorrect because, according to the offer made by the government, Roy Lee did not have any "right" to enter into the plea agreement unless he did so jointly with his father. (T at 25).

which had been presented was the government's last and final offer. (T at 27, 37).

This court is of the opinion that Roy Lee's testimony (that he would have accepted the plea agreement if he had been represented by separate counsel) is an afterthought based on pure speculation. The court is also of the opinion that Roy Lee would have gone along with his father, regardless of single or dual representation. Most importantly, this court would stress that no plea agreement existed for him to accept once his father rejected it. Therefore, Rasnic was not faced with a conflict of interest and his ability to advise Roy Lee was not adversely affected.

The Supreme Court has noted that the danger presented by joint representation may stem from what an attorney finds that he is compelled to refrain from doing[5]. *Holloway v. Arkansas*, 435 U.S. 475, 490, 98 S.Ct. 1173, 1181, 55 L.Ed.2d 426 (1978); *Hill v. Lockhart*, 474 U.S. 52, 58–59, 106 S.Ct. 366, 370–71, 88 L.Ed.2d 203 (1985). Likewise, the Fourth Circuit has noted a similar concern where one attorney represents co-defendants. *See United States v. Magini*, 973 F.2d 261 (4th Cir.1992) ("A conflict which causes counsel to fail to explore possible plea negotiations may implicate the Sixth Amendment right to counsel"); *Tatum*, 943 F.2d at 376 (noting that the failure to take actions that are clearly suggested from the circumstances can be revealing).

Upon accepting representation of the Gilliams, Rasnic believed that both Roy Lee and Elic were innocent of the charges brought against them. (T at 33–34). Thus, there was no reason for Rasnic to consider plea negotiations. According to Rasnic, it was not until the evidence began to mount during the trial that he realized the full extent of the evidence against his clients. (T at 36). The government approached Rasnic with the joint plea offer at the time Rasnic began to realize it might be in his client's best interest to plea bargain. By that time (toward the end of the trial), there was no room for negotiations as the government desired an all-or-nothing deal in order to end the litigation.[6] (T at 36). Since the government had such strong cases against *both* the Gilliams, it would be reasonable to assume the government would only be interested in a joint agreement.

Because of the circumstances surrounding the government's offer in this case, this court is of the opinion that there were no other avenues for plea negotiation open to Rasnic on behalf of either Roy Lee or Elic. The government had strong cases against each of the co-defendants and was ready to finish the trial unless both defendants desired to plea and save the government a few days of litigation. According to Rasnic's testimony, he had no reason to negotiate before trial. Once the trial began, the evidence suggests that the government was not interested in negotiating against only one defendant.[7] In

5. The Supreme Court specifically held that such danger is present in a case where there is "joint representation of conflicting interests." *Holloway v. Arkansas*, 435 U.S. 475, 490, 98 S.Ct. 1173, 1181, 55 L.Ed.2d 426 (1978). This court would not concede that there are conflicting interests in this case. Indeed, the interests of Roy Lee and Elic, with regard to both the plea negotiations and the trial, were in complete harmony.

6. Initially this case was brought against three defendants. The government dismissed the charges against the third defendant because the government's case against the third defendant was weak. (T at 29). Also, the government feared that, when combined with an otherwise strong case, the weak case would create jury confusion. (T at 29). The government's case against the Gilliams was considerably stronger, thus, the government was not interested in dismissing one of the Gilliams and proceeding at trial against the other. (T at 27–29).

Also, there is evidence that Rasnic inquired whether the government would take anything

less than the joint agreement offered. (T at 31) This would evidence a desire on the part of Rasnic to negotiate if the government had been willing.

7. The present case is similar to that of *Smith v. Newsome*, 876 F.2d 1461, 1463 (11th Cir.1989) where "joint representation did not prevent effective plea bargaining on behalf of either client." In *Smith*, an attorney represented Danny and Gene, co-defendants. Gene alleged ineffective assistance of counsel because his attorney participated in plea bargain negotiations on behalf of Danny but not Gene. Gene contends that his attorney's failure to negotiate was due to a conflict of interest which kept his attorney from being able to vigorously pursue plea negotiations on his behalf. *Id.*

The Eleventh Circuit in *Smith* held that plea negotiations for Gene were precluded because the state was unwilling to bargain with Gene, not because of the possibility of a deal for Danny. *Id.* Thus, the attorney's joint representation was

sum, this court finds that Rasnic's failure to attempt to negotiate a separate plea agreement on behalf of Roy Lee did not constitute ineffective assistance of counsel.

## II. Ineffective Assistance of Counsel at Trial

█ The Fourth Circuit in this case noted that "[t]here is also no suggestion that the alleged conflict impaired the ability of counsel to present the case to the jury." *Gilliam*, 975 F.2d at 1054. However, Roy Lee's testimony at the evidentiary hearing raises this issue. Despite the fact that it was not raised at trial, nor on appeal to the Fourth Circuit, this court will specifically rule on this issue at this time so it can be laid to rest.

The court, again, must examine whether an actual conflict of interest adversely affected Rasnic's performance during the trial. *Cuyler*, 446 U.S. at 348, 100 S.Ct. at 1718. It is not necessary to establish prejudice. *Id.* at 349, 100 S.Ct. at 1719. However, it has been held that "[a]ctual conflicts that adversely affect counsel's performance must be established by specific instances in the record." *United States v. Roth*, 860 F.2d 1382 (7th Cir.1988), *cert. denied*, 490 U.S. 1080, 109 S.Ct. 2099, 104 L.Ed.2d 661 (1989) (citing *United States v. Cirrincione*, 780 F.2d 620, 629 (7th Cir.1985)). The Fourth Circuit has held that an attorney's performance has been adversely affected when it is shown that the attorney *actively pursued* conflicting interests. *Hoffman v. Leeke*, 903 F.2d 280 (4th Cir.1990) (citing *Cuyler v. Sullivan*, 446 U.S. 335, 350, 100 S.Ct. 1708, 1719, 64 L.Ed.2d 333 (1980)) (emphasis added). In this case, the court finds that Rasnic's joint representation did not present a conflict of interest nor did it adversely affect his performance.

Roy Lee testified that on numerous occasions he asked Rasnic to object to the introduction of evidence regarding events in Oregon which did not apply to him. (T at 5).

According to Roy Lee, Rasnic refused to object on the grounds that an objection would hurt his father's case.[8] (T at 5–6). However, Roy Lee's testimony is in direct conflict with Rasnic's on this point.

Rasnic stated unequivocally that Roy Lee never asked him to object. (T at 39). Rasnic testified that Roy Lee's father sat between Rasnic and Roy Lee during the trial. (T at 40). Although Rasnic stated that he gave each defendant a pad and pencil so that they could communicate with him during the trial, Rasnic did not remember Roy Lee's sending him any notes requesting him to object. (T at 40). In fact, Rasnic testified that he did not recall any time when Roy Lee requested him to object. (T at 39). Rasnic testified that there was never a point in the trial when he could not object to certain evidence on behalf of Roy Lee because it would be detrimental to Elic. (T at 39). Moreover, Rasnic's testimony is bolstered by the fact that Roy Lee was unable to identify any specific incident when he requested Rasnic to object to the presentation of evidence. In fact, neither Roy Lee, nor his present counsel, was able to show this court any question in the entire (and lengthy) trial record where Rasnic should have objected to the introduction of certain evidence yet failed to do so. Indeed, the record is so replete with objections (it was a hard fought case) that it would be difficult to find any plausible reason for further objections.

In resolving this conflict in testimony between that of Roy Lee and that of Rasnic, the court believes Rasnic's testimony and, further, believes that Roy Lee's testimony regarding requests for Rasnic to object was manufactured after the fact. This court finds that Roy Lee's claim of ineffective assistance of counsel, due to Rasnic's failure to object to certain evidence, is not supported by the evidence.

not the factor which precluded plea negotiations for Gene and petitioner's attorney' was not adversely affected. *Id.* Likewise, in the instant case, Rasnic was precluded from seeking separate plea negotiations because the government was not willing to negotiate separate deals, not because of a conflict of interest due to joint representation.

8. Roy Lee asserts that the evidence regarding events in Oregon did not relate to him and that there was no evidence which tied Roy Lee to events Oregon. (T at 5). However, the government testified at the hearing that there were extremely strong similarities between evidence found with Roy Lee in Virginia and that found in Oregon. (T at 26).

Furthermore, there is no evidence illustrating that Rasnic's performance at trial was in any other way adversely affected due to his joint representation. According to Rasnic, any variation in trial techniques as between the Gilliams was in order to keep the cross-examination of witnesses and the presentation of evidence distinct where there was any difference in the amount of evidence against them.[9] (T at 53–54). Rasnic further testified that, at some point during the trial, his strategy became that of trying to keep separate the evidence used to convict Elic from that used to convict Roy Lee. (T at 54). He believed that separating the evidence as to each defendant would assist the jury in delineating which evidence had been produced against which defendant, and thus, the defendant against whom there was less evidence might be found not guilty. (T at 54).

Even though Rasnic's trial strategies might have varied as between Roy Lee and Elic, Rasnic was never faced with a situation where one co-defendant could exculpate himself by implicating the other. This was because neither Roy Lee nor Elic alleged either himself or his co-defendant was guilty.[10] Rasnic was able to present a unified defense on behalf of the Gilliams throughout the trial. Accordingly, this court finds that Rasnic's trial strategy did not produce a conflict of interest and that Rasnic's ability to defend his clients was not impaired.

## CONCLUSION

This court finds that there was no conflict which impaired Rasnic's ability to advise Roy Lee regarding the plea arrangement or present Roy Lee's case to the jury. Contrary to the opinions of counsel, this court reviews the evidence in this case to be equally strong against both Roy Lee and Elic. This is not a case where a lawyer was representing two defendants with conflicting defenses, the defenses of father and son in this case were the same in every respect.

---

**9.** Even prosecutor Kilgore noted that "Mr. Rasnic did cross-examine every witness." (T at 26).

