Teresa Ann WILSON, # 168081,
Petitioner,

v.

Michael MOORE, Commissioner of SCDC; and Charles Molony Condon, Attorney General of the State of South Carolina, Respondents.

No. CIV.A. 2:97–1040–20AJ.

United States District Court,
D. South Carolina,
Charleston Division.

March 27, 1998.

David I. Bruck, Columbia, SC, for Petitioner.

Donald J. Zelenka and Robert F. Daley, Jr., Office of the Attorney General, Columbia, SC, for Respondents.

## ORDER

HERLONG, District Judge.

This matter is before the court with the Report and Recommendation of the United States Magistrate Judge, made in accordance with 28 U.S.C. § 636(b) and Local Rule 19.02 DSC.[1] Teresa Ann Wilson ("Wilson"), a state

---

1. The recommendation has no presumptive weight, and the responsibility for making a final determination remains with the United States District Court. *Mathews v. Weber*, 423 U.S. 261, 96 S.Ct. 549, 46 L.Ed.2d 483 (1976). The court is charged with making a *de novo* determination of those portions of the Report and Recommendation to which specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the Magis-

prisoner, seeks federal habeas corpus relief pursuant to 28 U.S.C. § 2254. Wilson filed her petition on April 21, 1997. The Respondents filed a motion for summary judgment on June 18, 1997. Wilson responded with a memorandum opposing the motion on August 8, 1997. In his Report and Recommendation, the Honorable Robert S. Carr recommends that the court grant the motion. For the reasons stated below, this court accepts the Magistrate Judge's recommendation and grants the Respondents' motion.

## I. STATEMENT OF THE FACTS

### A. Procedural and Factual Background

The Grand Jury of South Carolina indicted Wilson; her husband, Ronnie Wilson; and several members of the Wilson family on numerous drug-related charges. Wilson and her husband retained Douglas S. Strickler ("Strickler") as their attorney. On May 1, 1990, following a week-long trial, a jury found Wilson and her husband guilty of two counts of conspiring to traffick cocaine and marijuana and one count of the actual trafficking of cocaine. The state court sentenced Wilson and her husband to twenty-five (25) years in prison.

Wilson appealed her conviction and sentence by raising ten separate faults with her criminal trial.[2] On July 19, 1993, the Supreme Court of South Carolina affirmed the two conspiracy convictions. *See State v. Wilson*, 315 S.C. 289, 433 S.E.2d 864 (1993).

However, the state court vacated the trafficking conviction because the state grand jury did not have subject matter jurisdiction over that charge. *Id.* Wilson asked the Supreme Court of South Carolina to rehear the matter. On August 17, 1993, the court denied her request.

On October 15, 1993, Wilson filed an application for post-conviction relief ("PCR"), alleging several grounds. Wilson argued that she was unlawfully sentenced, that her counsel was ineffective, and that her counsel operated out of a conflict of interest by representing both her and her husband. On July 20, 1994, Wilson's new counsel amended her PCR application to assert that her right to counsel was violated by Strickler's joint representation of Wilson and her husband at trial. Furthermore, Wilson's amendment stated that she did not knowingly waive her right to separate counsel. The South Carolina PCR court allowed the amendment.

A South Carolina Court of Common Pleas heard Wilson's request for PCR on July 20, 1994, with testimony from both Wilson and Strickler. Wilson testified "concerning the abuse and domination that characterized her marriage before and during trial." (Pet.'s for State Writ of Habeas Corpus at 12.) Furthermore, Wilson stated that it was this abuse that led her to agree to Strickler's joint representation of her and her husband. On March 31, 1995, the Honorable L. Casey Manning dismissed Wilson's PCR application.[3] Wilson notified the PCR court of her

---

trate Judge or recommit the matter to him with instructions. 28 U.S.C. § 636(b)(1).

**2.** Wilson's grounds for appeal are summarized as follows: (1) the grand jury did not have jurisdiction to impose one count of her indictment; (2) prosecution of two counts of her indictment violated the "savings clause" of the South Carolina Criminal Code; (3) one count of the indictment was unconstitutionally charged because it did not occur during the time frame of the indictment; (4) two counts of the indictment failed to allege a criminal offense; (5) the indictment unconstitutionally aggregated drug amounts to constitute a "trafficking" charge; (6) two counts of the indictment were prosecuted *ex post facto;* (7) two counts of her indictment unconstitutionally charged her with the same offense twice; (8) prosecution of one count of the indictment constituted double jeopardy as she had already been convicted of the charges in the count; (9) the sentencing court improperly considered a prior

conviction for penalty enhancement when those convictions were part of the charged indictment; (10) the trial court unconstitutionally allowed testimony regarding her possession of firearms.

**3.** Judge Manning's decision, in pertinent part, reads:

The Applicant also claims she received ineffective assistance of counsel because her counsel was affected by a conflict of interest because he also represented the Applicant's husband, a co-defendant.

Until a defendant shows that his counsel actively represented conflicting interest, he has not established the constitutional predicate for a claim of ineffective assistance of counsel arising from multiple representation. *Cuyler v. Sullivan*, 446 U.S. 335, 350, 100 S.Ct. 1708, 1719, 64 L.Ed.2d 333, 347 (1980); *see also, Burger v. Kemp*, 483 U.S. 776, 783, 107 S.Ct.

intent to appeal its ruling on May 4, 1995. Wilson filed a petition for a writ of certiorari to the Supreme Court of South Carolina based on two issues: (1) the denial of Wilson's right to counsel due to Strickler's joint representation of Wilson and her husband; and (2) the ineffectiveness of her waiver of Strickler's conflict of interest. The Supreme Court of South Carolina denied Wilson's petition on February 22, 1996.

As noted above, Wilson filed the instant petition on April 21, 1997. Attached to her petition were several affidavits and a psychiatric report that had not been submitted to the South Carolina courts.[4] On October 2, 1997, after reviewing the Respondents' motion for summary judgment, Magistrate Judge Carr ordered the parties to brief the court on the issue of whether the federal courts could review the newly filed affidavits and psychiatric report. Prior to a ruling by Magistrate Judge Carr, in November of 1997, Wilson filed a petition for a Writ of Habeas Corpus in the original jurisdiction of the Supreme Court of South Carolina seeking its consideration of the new documents.[5] The Supreme Court of South Carolina denied this petition on December 22, 1997. Magistrate Judge Carr issued his Report and Recommendation without considering the new evidence, and recommended the denial of Wilson's petition.

> 3114, 3120, 97 L.Ed.2d 638, 650 (1987). The mere possibility of a conflict of interest is insufficient to impugn a criminal conviction. *Cuyler*, 446 U.S. at 350, 100 S.Ct. at 1719, 64 L.Ed.2d at 348.
>
> This Court finds that counsel informed the Applicant of the hazards of representing codefendant's and received assurance from both the Applicant and her husband that they had no reservations concerning counsel's dual representation. Additionally this Court finds that a status conference was held on February 21, 1990, before the Honorable John Hamilton Smith in which the conflict of interest issue was addressed. This Court finds that the Applicant, at that time, executed a waiver of any conflict of interest claim. This Court finds no deficiency on the part of counsel with respect to this allegation.
> (Pet.'s for State Writ of Habeas Corpus at 14.)

4. Wilson obtained affidavits from several friends and family members, including: Deborah Gentry, Rhonda Hammond, Janice Britt, Elizabeth

## B. Grounds for Habeas Corpus Relief

Wilson's federal habeas petition argues for her release based on two related grounds:

> Petitioner was denied her Sixth and Fourteenth Amendment right to the effective assistance of counsel because she was represented at trial by the same attorney who also represented her co-defendant husband, and because she did not validly waive her right to conflict-free representation.

(Pet. for Writ of Habeas Corpus at 6.) Wilson attempts to supplement the facts presented in the underlying state actions with several affidavits and a medical report on her psychiatric and emotional condition. The thrust of Wilson's argument is that she was intimidated into using her husband's trial counsel because of a history of spousal abuse. Though Wilson presented these issues to the state PCR court, she supported them only with her own testimony. The sworn affidavits and psychiatric report attest to Wilson's history and condition as a battered wife.

## II. DISCUSSION OF THE LAW

Wilson filed her petition for federal habeas corpus relief in this court on April 21, 1997. As such, the provisions of the Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996 govern the court's resolution of her case.[6] Therefore, the court will first present

W. Campbell, Sally McGuire. Dr. Lois J. Vernon performed the mental evaluation filed with Wilson's petition. *See* (Pet. for Habeas Corpus at Exhs. A–G.) The court will collectively refer to these affidavits and medical report as Wilson's "new evidence."

5. The Supreme Court of South Carolina retains a constitutional grant of original jurisdiction to entertain habeas corpus petitions, outside of the statutory PCR proceedings, "when there is an extraordinary reason such as a question of significant public interest or an emergency." *Key v. Currie*, 305 S.C. 115, 406 S.E.2d 356, 356 (1991); *see also Simpson v. State*, 329 S.C. 43, 495 S.E.2d 429 (1998) (forthcoming published opinion).

6. The AEDPA amended 28 U.S.C. § 2254 and altered the disposition of federal habeas corpus cases in several areas. Petitions filed after the April 24, 1996, enactment of the AEDPA fall under the new law. *See Lindh v. Murphy*, —— U.S. ——, ——, 117 S.Ct. 2059, 2067, 138 L.Ed.2d 481 (1997).

the posture of this case under the AEDPA. The court will then decide the merits of the Respondents' motion.

### A.   28 U.S.C. § 2254

Generally, federal courts must deny habeas relief to a state prisoner whose claim was decided on the merits in the state courts. 28 U.S.C. § 2254(d) (1997). Unlike federal habeas corpus analysis under the pre-AEDPA law, "[t]he focus of federal court review is now the state court decision that previously addressed the claims rather than the petitioner's freestanding claims themselves." *McLee v. Angelone*, 967 F.Supp. 152, 156 (E.D.Va.1997). State prisoners may obtain federal habeas relief if they show the state's decision was: (1) against "clearly established Federal law;" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). As stated above, the South Carolina PCR court heard the two related claims that Wilson brings in the instant action: (1) denial of effective assistance of counsel at trial due to her sharing an attorney with her husband; and (2) an involuntary waiver of her right to conflict-free legal representation. The PCR court dismissed Wilson's claims. The Supreme Court of South Carolina denied her request to review the PCR court's decision. Therefore, Wilson must convince this court that the South Carolina courts failed to properly apply the tenets of federal law or that the state courts' decisions were unreasonable.

Wilson's petition challenges both points under section 2254(d). First, Wilson contends that the decision of the PCR court, and the recommendation of the Magistrate Judge, fail to recognize a clear violation of her federal right to effective assistance of counsel. (Pet.'s Resp. to Mot. for Summ. J. at 1–5; Pet.'s Objs. to the Rep. & Rec. at 6–14.) Furthermore, Wilson charges that the state PCR court and the Magistrate Judge's recommendation are not reasonable under the facts presented to the state courts. (Pet.'s Reply to Resps.' Supp. Mem. of Law at 5–6; Pet.'s Objs. to the Rep. & Rec. at 1–5.) Before the court can consider the merits of Wilson's petition, it must first determine what evidence in support of her claim is properly before this court.

### B.   Wilson's New Evidence

#### 1.   Consideration of new evidence by South Carolina's courts

The court cannot review Wilson's new affidavits and psychiatric evidence. Congress has decided that a federal habeas corpus court must judge the reasonableness of the state court decision *"in light of the evidence presented in the State court proceeding."* 28 U.S.C. § 2254(d)(2) (emphasis added). The first issue before the court is whether or not the South Carolina courts effectively considered the new affidavits and psychiatric report in denying Wilson's pleas for post-conviction relief. This evidence was never before any South Carolina court until Wilson's petition for a writ of habeas corpus before the Supreme Court of South Carolina last November. Therefore, this court must now determine if the Supreme Court of South Carolina considered the merits of Wilson's claim in light of the new evidence, or whether the court refused to view the new evidence and disposed of her writ through a state procedural bar.

■ The Supreme Court of South Carolina's denial of Wilson's petition for a writ of habeas corpus was based on a state procedural bar. This court may not review a state court's decision "if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). In some instances, "there is a presumption in habeas that a state court's dismissal of a petition for collateral relief does not rest on an independent and adequate state ground and that the state court has rejected the petitioner's federal claims on the merits." *Nickerson v. Lee*, 971 F.2d 1125, 1127 (4th Cir.1992) (referring to presumption created in *Harris v. Reed*, 489 U.S. 255, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989)). However, federal courts must follow the *Harris* presumption " 'only ... in those cases where a federal court has good reason to question whether there is an independent and adequate state ground for the decision.' "

*Nickerson,* 971 F.2d at 1127 (quoting *Coleman,* 501 U.S. at 739). Thus, the court must decide if good reason exists to question the Supreme Court of South Carolina's summary denial of Wilson's claim.

■ Fourth Circuit habeas corpus jurisprudence looks to certain factors when determining whether cursory state court rulings are based on state procedural grounds. *See Smith v. Dixon,* 14 F.3d 956, 963 (4th Cir.), *cert. denied,* 513 U.S. 841, 115 S.Ct. 129, 130 L.Ed.2d 72 (1994), *reh'g denied,* 513 U.S. 1105, 115 S.Ct. 785, 130 L.Ed.2d 678 (1995).[7] The decision in question by the South Carolina Supreme Court reads: "Petition for Habeas Corpus is denied." (Mag. Judge's Rep. & Rec. at 7 n. 1.)[8] If a state court issues an ambiguous, summary ruling, federal courts must examine the nature of the state court's disposition by considering: (1) the absence of a separate, federal reason for the state court's adjudication of the case; (2)

whether the state court "dismisses" or "denies" the action; and (3) the circumstances surrounding the entry of the order. *Smith,* 14 F.3d at 963 (citing *Coleman,* 501 U.S. at 739–40; *Ylst v. Nunnemaker,* 501 U.S. 797, 802–03, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991)). In the instant case, these factors weigh in favor a procedural disposal of Wilson's state habeas corpus writ.

### a. Absence of federal law

■ The absence of a discussion in the South Carolina Supreme Court's decision demonstrates its reliance on state procedural grounds. This court can view this silence as evidence of a decision on the merits only if there is "good reason to question whether there is an independent and adequate state ground for the decision." *Coleman,* 501 U.S. at 739. In *Coleman,* the Court relied heavily on the two facts in determining a state court procedurally dismissed a prisoner's appeal:

that a state court wishing to dispose of a claim by procedural default, without reaching the merits, will instead "dismiss" the case. (*Id.* at 4.) Indeed, the Respondents urged the South Carolina Supreme Court to "dismiss" Wilson's petition, rather than "deny" it. (Pet.'s Reply to Resps.' Supp. Mem. of Law at 2.) However, both sides fail to mention that the *Harris* presumption was significantly altered by the Court in *Coleman v. Thompson,* 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).

The Fourth Circuit has established guidelines for determining when the *Harris* presumption applies, in light of the *Coleman* decision. In quoting *Coleman,* the Fourth Circuit instructs us that: " '*Per se* rules should not be applied ... in situations where the generalization is incorrect as an empirical matter; the justification for a conclusive presumption disappears when application of the presumption will not reach the correct result most of the time.' " *Smith,* 14 F.3d at 963 (quoting *Coleman,* 501 U.S. at 737). Instead, when a state court issues an ambiguous order in a matter involving federal rights, federal courts may conclude the state rested on a state procedural bar after weighing several factors: (1) whether the state order mentions federal law in the summary order; (2) whether the state court "dismisses" or "denies" the action; and (3) whether the circumstances surrounding the entry of the order indicate the state court relied on a state procedural bar. *Id.* This court looks to these guidelines to determine if the Supreme Court of South Carolina reviewed the merits of Wilson's habeas petition or summarily disposed of her claim by a state procedural bar.

---

7. The court recognizes that other courts, primarily the Eastern District of North Carolina, question the authority of the Fourth Circuit's opinion in *Smith. See Brooks v. North Carolina Dep't of Correction,* 984 F.Supp. 940, 949 (E.D.N.C.1997). Though not noted in the text of Judge Wilkins' opinion, an *en banc* session of the Fourth Circuit decided *Smith* and split evenly on the procedural default issue. *Smith,* 14 F.3d at 982 n. 16. Thus, the ruling does not carry full authoritative weight. *See Ashe v. Styles,* 39 F.3d 80, 86 n. 4 (4th Cir.1994). However, many courts rely on *Smith'*s guidance in this intricate area of habeas corpus law. *See, e.g., Green v. French,* 978 F.Supp. 242, 250 (E.D.N.C.1997); *Ward v. French,* 989 F.Supp. 752, 759–60 (E.D.N.C.1997) (forthcoming published opinion). Indeed, the *Smith* opinion highlights the relevant Fourth Circuit case law in this area, especially in light of the United States Supreme Court opinion in *Coleman v. Thompson. See infra* n. 8 (discussion of *Coleman* and its impact on the instant case). The court relies on *Smith* to shed light on controlling Fourth Circuit precedent in this area of the law.

8. Wilson argues that the South Carolina Supreme Court's "denial" of her habeas petition indicates that it considered her new evidence and rendered a decision on the merits, enabling this court to consider the same evidence. (Pet.'s Objs. to the Mag. Judge's Rep. & Rec. at 2.) She asserts that United States Supreme Court precedent requires federal courts to presume that summary denials by state supreme courts were adjudicated on the merits. (*Id.* at 4–5) (citing *Harris v. Reed,* 489 U.S. 255, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989).) Wilson's argument follows

(1) that a procedural remedy existed under the state law to dispose of the post-conviction appeal and (2) that the state relied exclusively on this procedural bar in its arguments to the state court. *Id.* at 740; *see Ylst*, 501 at 802–03 (1991). These components line up against Wilson.

South Carolina's post-conviction procedural rules provided a way to quash Wilson's state habeas petition. An examination of these rules reveal the likelihood that the state's highest court disposed of Wilson's petition under a procedural precept. Though she attempted to invoke the high court's original jurisdiction, Wilson acknowledges that the PCR procedural rules governed her petition for a state writ of habeas corpus. (Pet.'s Objs. to the Rep. & Rec. at 5 n. 2) ("[T]raditional procedural default rules applicable to post-conviction relief claims are likewise applicable in habeas corpus proceedings."); *see also* S.C.Code Ann. § 17–27–30 (1985) (PCR rules should apply to habeas corpus writs in the original jurisdiction of the Supreme Court of South Carolina). South Carolina's rules governing PCR hearings state: "All grounds for relief available to an applicant under this chapter must be raised in his original, supplemental or amended application." S.C.Code Ann. § 17–27–90 (1985). Any issue which could have been raised in the initial state PCR action cannot be raised in a second PCR action. *Arnold v. State*, 309 S.C. 157, 420 S.E.2d 834, 842–43 (1992). A PCR applicant cannot circumvent this rule and file a successive application "on the ground that his first complete PCR application was insufficient due to ineffective PCR counsel." *Aice v. State*, 305 S.C. 448, 409 S.E.2d 392, 393 (1991). The history of Wilson's case shows that she did not comply with these procedural guidelines.

As detailed above, Wilson argued to the PCR court that the trial attorney's joint representation of her and her husband rendered her counsel ineffective. Wilson testified on her own behalf at the PCR hearing to support these claims. In her state habeas petition, Wilson argued that her PCR counsel did not "present any corroboration of [Wilson's] testimony, even though such corroboration was readily available . . . ." (State Pet. for Writ of Habeas Corp. at 13.) She now allegedly has this corroboration in her new affidavits and medical report. Wilson's attempt to present this evidence to the Supreme Court of South Carolina is effectually a second PCR application, based on the same claim for ineffective assistance of counsel. She argued that the state court should consider the evidence because her PCR attorney did not do his job the first time. However, as outlined above, South Carolina procedural rules prevent successive PCR applications, even if the PCR counsel was ineffective. *See Arnold*, 420 S.E.2d at 843; *Aice*, 409 S.E.2d at 393. Furthermore, the state did not address Wilson's substantive claims in arguing for the Supreme Court of South Carolina to refuse her state habeas petition. (Suppl. Mem. of Law in Supp. of Mot. for Summ. J. at 1.) The state urged the high court to dismiss Wilson's claim without reaching the merits of the case. (*Id.*) Therefore, it is likely that the state court's denial of Wilson's state habeas petition did not reach the merits of her claim. Instead, the South Carolina Supreme Court recognized this procedural bar and summarily disposed of her claim.

### b. "Denial" v. "Dismissal"

The "denial" by the Supreme Court of South Carolina, rather than a "dismissal," does not evidence its consideration of the merits of Wilson's claim. Wilson argues that a "denial" by a court indicates that the court considered the merits of the claim and refused to grant relief. (Pet.'s Objs. to the Mag. Judge's Rep. & Rec. at 2.) On the other hand, a "dismissal" by a court demonstrates the court relied on some procedural default without analyzing the substance of the claim. (*Id.* at 4.) Though the *Coleman* court did consider this terminology as evidence, *see Ylst*, 501 U.S. at 802 (noting "dismissal" of case in *Coleman* was a "clue" for court to use), no bright line rule exists. In *Smith*, the Fourth Circuit wrestled with a summary "denial" by a Virginia state court. Under the *Coleman* analysis, the *Smith* court held that the other factors surrounding the state order showed that the state court based its decision on a state procedural bar, despite the "denial" language. *Smith*, 14 F.3d at 963. Wilson's claim is very similar. Though the South Carolina Supreme Court "denied"

Wilson's habeas petition, the factors surrounding the disposal of her case overwhelmingly point to a state procedural bar.

### c. Surrounding circumstances

The unusual posture and timing of Wilson's petition evidence that the South Carolina Supreme Court refused to consider the merits of her claim. "Surrounding circumstances [may] indicate[] that the basis [for a summary state court ruling] was procedural default." *Ylst*, 501 U.S. at 802. Wilson had already exhausted the standard state post-conviction procedures prior to filing her federal habeas corpus petition. The same claims presented in her federal petition had already been argued before a state PCR court. The PCR court refused to grant Wilson relief from her conviction and the South Carolina Supreme Court refused to review the PCR decision. Wilson, for the first time, submitted the new evidence supporting her claims with her federal petition. Only after the United States Magistrate Judge ordered her and the Respondents to brief the federal court on the admissibility of the new evidence did Wilson request the Supreme Court of South Carolina to take the extreme measure of exercising its original jurisdiction to grant her a state writ of habeas corpus.

Wilson filed her state petition in the South Carolina Supreme Court's original jurisdiction in early November, 1997. South Carolina court rules require a party seeking to invoke the high court's original jurisdiction to file a petition and a complaint stating their requested relief. S.C.A.C.R. 229(b). Once notified of the petition, a respondent has twenty (20) days to respond. *Id.* at 229(c). Accordingly, the South Carolina Supreme Court could not properly consider the matter before the state's response near the end of November. The Supreme Court denied Wilson's petition on December 29, 1997. It is highly unlikely that, in this short span of

time, the state's highest court considered the substantive issues and voluminous records, including the new evidence, involved in Wilson's claims. When considering its ability to grant habeas writs through its original jurisdiction, the South Carolina Supreme Court often details its reasoning. *See, e.g. Key v. Currie*, 305 S.C. 115, 406 S.E.2d 356 (1991) (denying writ petition because no "extraordinary reason" existed); *Butler v. State*, 302 S.C. 466, 397 S.E.2d 87 (1990) (granting writ petition where facts involved were "shocking to the universal sense of justice"). The one-sentence denial of Wilson's petition shows the state did not consider the merits of her claim in light of the new evidence.[9]

The above analysis instructs the court that Wilson failed to properly present her new evidence to the South Carolina courts. However, evidence not presented to state courts may come before a federal habeas court if certain conditions are met.

### 2. Federal Evidentiary Hearing

■ Under AEDPA, federal courts presiding over habeas petitions from state prisoners must normally presume that all factual findings in the prior state proceedings are correct. 28 U.S.C. § 2254(e)(1); *Ward*, 989 F.Supp. at 759–60. When considering habeas petitions:

(2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—.

(A) the claim relies on—

(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

---

9. A federal habeas petitioner may overcome a state's procedural default "by demonstrating cause for failing to adhere to a state procedural requirement and prejudice resulting from that failure, or by establishing actual innocence." *Brooks*, 984 F.Supp. at 948 (citing *Coleman*, 501 U.S. at 750; *Murray v. Carrier*, 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986)). Wilson has not argued that she has a justifiable cause for not

following South Carolina's procedural rules and that she was prejudiced by that failure. Furthermore, she does not claim to be actually innocent of the drug charges at the heart of this case. Therefore, this court finds that Wilson may not overcome the Supreme Court of South Carolina's procedural disposal of her state writ of habeas corpus.

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

*Id.* at § 2254(e)(2). It is clear that section "2254(e)(2) is designed to restrict the development of facts in federal habeas proceedings that were not known to or considered by a state court." *Cardwell v. Netherland,* 971 F.Supp. 997, 1011 (E.D.Va.1997). In restricting such facts, the statute "must only apply to a subset of applicants seeking to introduce new evidence in federal court." *Id.* One seeking to admit new evidence " 'fails' when he does not take or seek the opportunity to develop evidence in a state court proceeding." *Id.* By contrast, "an applicant does not 'fail' where he seeks, but is denied, the opportunity to develop facts in state court." *Id.* Thus, Wilson's attempt to introduce the new evidence hinges on whether she properly attempted to introduce the same in her state court proceedings.

The court cannot consider Wilson's new evidence because she did not seek to submit it to the South Carolina courts at the appropriate time. Wilson's claim before this court does not rely on a retroactive application of new constitutional law. *See* 28 U.S.C. § 2254(e)(2)(A)(i). Also, the new evidence is not the type that "could not have been previously discovered through the exercise of due diligence." *Id.* at § 2254(e)(2)(A)(ii). As painstakingly depicted above, Wilson had an opportunity to present all of her evidence when she first argued her claims before the state PCR court. Her efforts to circumvent the strict state and federal procedural rules governing habeas corpus cases have failed. Therefore, this court cannot consider Wilson's new evidence.

### C. Respondent's Summary Judgment Motion

#### 1. Summary Judgment Standard

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A disputed fact is "material" if it might affect the outcome of the lawsuit under governing law. *Id.* A court must view the facts and inferences to be drawn in the light most favorable to the nonmoving party. *Miller v. Leathers,* 913 F.2d 1085, 1087 (4th Cir.1990).

#### 2. Sixth Amendment Right to Counsel

Nothing in her state court proceedings violated Wilson's constitutional right to counsel.[10] The Sixth Amendment to the United States Constitution "guarantees criminal defendants the right to effective assistance of counsel, including the right to representation free from conflicts of interest." *Gilbert v. Moore,* 134 F.3d 642, 652 (4th Cir.1998)) (citing *Strickland v. Washington,* 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). A counsel is ineffective if: (1) his performance was deficient, or fell below an objective standard of reasonableness; and (2) that this deficient performance prejudiced his client's case so that the criminal defendant was deprived of a fair trial. *Strickland,* 466 U.S. at 687–688. Furthermore, Wilson's right to effective assistance of counsel, including the right to conflict-free representation, is subject to waiver. *Gilbert,* 134 F.3d at 652–53. Wilson's claim is judged under these standards.

#### a. *Strickland* Test

▇ Wilson's allegation that her counsel was ineffective fails under the analysis outlined in the *Strickland* opinion. Wilson claims her counsel was ineffective due to a conflict of interest that arose from his joint

10. The court fully endorses the Magistrate Judge's exposition of the federal case law on a criminal defendant's right to counsel. *See* (Mag. Judge's Rep. & Rec. at 10–27.) The Magistrate Judge correctly applied this law to the facts of Wilson's case. The court will only briefly review the major rules of law in its opinion.

representation of her and her husband. Joint representation is not a *per se* violation of the constitutional right to effective counsel. *Id.* at 652. However, a federal habeas corpus petitioner can prevail in an effective assistance of counsel claim by "demonstrating the existence of an actual conflict of interest." *Id.* (citing *Cuyler v. Sullivan*, 446 U.S. 335, 348, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980)). The petitioner must do this by showing: (1) her interests parted with her attorney's due to a material fact, a legal issue, or a course of action; and (2) "that the conflict adversely affected [her] attorney's performance." *Gilbert*, 134 F.3d at 652. Under the *Strickland* analysis, if the petitioner proves these two elements, "prejudice is presumed and [she is] entitled to habeas relief." *Id.* Wilson fails under this test to show her attorney suffered from an actual conflict of interest.

■ Wilson's attorney, Strickler, always maintained Wilson's interests in his representation at her trial. Wilson and her husband retained one attorney due to the obvious strategic benefits. Strickler testified that the Wilsons "were hanging together on this as did everyone else involved in the case." (Mag. Judge's Rep. & Rec. at 14–15.) Wilson now argues that Strickler's joint representation arrangement hindered his ability to negotiate a proper plea agreement and that Stickler failed to notify the state of Wilson's "true status" as an abused spouse. (Pet. for Habeas Corpus at 7–9.)

Wilson testified to the PCR court that her attorney negotiated a plea agreement with the state's prosecutors on her behalf. (Mag. Judge's Rep. & Rec. at 19.) However, according to Strickler's testimony, Wilson rejected all offers to plead guilty that involved her serving any time in prison. (*Id.* at 20.) Based on the state's record of her case, this was an unreasonable position for Wilson to take. (*Id.* at 16–18) (documenting Wilson's "significant involvement in the [drug] conspiracy.") Therefore, Wilson's failure to secure a proper plea bargain was caused by her own unreasonable demands, not an alleged conflict of interest by her attorney. Accordingly, Strickler always conducted Wilson's defense with her interests foremost in mind.[11]

Strickler also did not fail to account for Wilson's marital status. Wilson admits that Strickler, at most, knew that "there was some degree of disharmony in the [Wilsons'] marriage." (Pet.'s Objs. to the Mag. Judge's Rep. & Rec. at 11–12.) Strickler testified about the Wilsons' marital problems at the PCR hearing. (*Id.* at 12.) Wilson argues that Strickler's failure to act upon this knowledge demonstrates his inability to provide her with effective counsel. Wilson is wrong. In similar cases, federal appellate courts have found no conflict of interest existed between the defendant and her attorney.

In *United States v. Acty*, 77 F.3d 1054 (8th Cir.), *cert. denied*, —— U.S. ——, 117 S.Ct. 189, 136 L.Ed.2d 127 (1996), the defendant argued that an attorney's joint representation of her and her husband, "along with the couple's marital difficulties, gave rise to competing interests between the two defendants." *Id.* at 1057. Based on these allegations, the court found no conflict existed and that the defendant had competent counsel. The Eighth Circuit reasoned:

> The [husband and wife] were unified in their defense throughout the early pretrial stages.... While it is evident the couple was experiencing marital difficulties at that time, nothing in the record indicates that the marital problems were related to disagreements over either party's [defense] or over trial strategy.

*Id.* Similarly, Strickler's representation of Wilson was not compromised by the revela-

---

**11.** Furthermore, even if Wilson could show that Strickler did depart from her interests, she cannot show that his performance was "adversely affected." *Gilbert*, 134 F.3d 642, 652–53. The United States Court of Appeals for the Fourth Circuit has repeatedly affirmed that an attorney's joint representation of family members does not create a conflict of interest and does not affect the attorney's ability to properly represent his clients. *See, e.g., United States v. Ramsey*, 661 F.2d 1013, 1019–20 (4th Cir.1981), *cert. denied sub. nom, Ramsey v. United States*, 455 U.S. 1005, 102 S.Ct. 1642, 71 L.Ed.2d 874 (1982); *United States v. Gilliam*, 835 F.Supp. 288, 290–291 (W.D.Va.1993), *aff'd, .34 F.3d 1067 (1994). The facts before the court do not warrant departing from this precedent and the conclusion of the Magistrate Judge.

tion of any marital problems. This was the conclusion of the PCR court and the Magistrate Judge. This court will not disturb that decision.

### b. Waiver

Even if Wilson had some articulable claim for ineffective counsel based on her joint representation arrangement, she waived this right before the South Carolina courts. "To establish in habeas corpus a deprivation of [her] constitutional right to effective assistance of counsel, Petitioner[ ] must show that [she] did not intentionally, knowingly, and voluntarily relinquish this right." *Gilbert,* 134 F.3d at 653. After a thorough review of her rights as a criminal defendant by the trial court, Wilson expressed a desire to waive any conflict prior to trial. (Mag. Judge's Rep. & Rec. at 23.) She followed this assent to joint representation by signing a waiver of conflict form. (*Id.*) As noted by the Magistrate Judge, the PCR court found "that the petitioner was advised both by counsel and the court of the hazards of joint representation and 'executed a waiver of any conflict of interest.'" (*Id.* at 22) (quoting the PCR court.) Such factual findings by a state tribunal are presumed correct by this court. 28 U.S.C. § 2254(e)(1) (1997). Wilson has failed to rebut these findings by "clear and convincing evidence." *Id.* Therefore, the court finds that Wilson did waive her right to conflict-free counsel.

### III. Conclusion

Wilson's claim for ineffective assistance of counsel fails as a matter of law. The record before the court cannot support her allegations. Wilson was afforded myriad opportunities to articulate her claim in the South Carolina courts. She may not now retry her case in the federal system. In summary, the court finds guidance from an opinion of the United States Court of Appeals for the Fifth Circuit in a strikingly similar case. In denying a right to counsel claim, the Fifth Circuit wrote:

> [The defendant] was fully apprised of the dangers inherent in joint representation; she consented to the representation after the conflict was explained to her by

both the court and her counsel; and [her attorney] expressed his reasonable belief that his dual representation would not affect his ability to represent [the defendant's] interests. As neither the defense of duress nor the defense of battered spouse was raised at trial—and, based on the record [at trial], it is far from certain whether facts exist that would even plausibly support the raising of either defense— we cannot say that [the attorney] was unreasonable in believing that his dual representation would not affect his ability to represent [the defendant]....

> The record before us indicates that there are precious few facts on which a defense counsel could credibly construct an argument that [the defendant] became involved in this [drug] operation and continued her involvement for a protracted period because she was under duress or was a battered spouse .... As such, we cannot say either that the joint representation in this case created an actual conflict or that, if it did, the conflict was sufficient to impugn the judicial system or render [the defendant's] trial inherently unfair, thereby making her right to conflict-free counsel unwaivable. To the contrary, it was waivable; she did waive it; and she did so knowingly, intelligently, and voluntarily.

*United States v. Rico,* 51 F.3d 495, 511–12 (5th Cir.1995). This court echoes this sentiment in the instant case.

Therefore, the court adopts the Magistrate Judge's Report and Recommendation and incorporates it herein. Accordingly, it is

**ORDERED** that Respondents' motion for summary judgment is granted.

**IT IS SO ORDERED.**

### NOTICE OF RIGHT TO APPEAL

Petitioner is hereby notified that he has the right to appeal this order within thirty days from the date hereof, pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure.