**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

TERESA ANN WILSON,
Petitioner-Appellant,

v.

MICHAEL MOORE, Commissioner of

South Carolina Department of
Corrections; CHARLES MOLONY
CONDON, Attorney General of the
State of South Carolina,
Respondents-Appellees.

No. 98-6577

Appeal from the United States District Court
for the District of South Carolina, at Charleston.
Henry M. Herlong, Jr., District Judge.
(CA-97-1040-2-20AJ)

Argued: January 28, 1999

Decided: May 25, 1999

Before WILKINSON, Chief Judge, TRAXLER, Circuit Judge,
and GOODWIN, United States District Judge for the
Southern District of West Virginia, sitting by designation.

_____

Affirmed by published opinion. Judge Traxler wrote the opinion, in
which Chief Judge Wilkinson and Judge Goodwin joined.

_____

**COUNSEL**

**ARGUED:** David Isaac Bruck, Columbia, South Carolina, for Appel-
lant. Robert Eugene Bogan, Assistant Attorney General, Columbia,

South Carolina, for Appellees. **ON BRIEF:** Charles M. Condon, Attorney General, John W. McIntosh, Deputy Attorney General, Donald J. Zelenka, Assistant Deputy Attorney General, Columbia, South Carolina, for Appellees.

_____

## OPINION

TRAXLER, Circuit Judge:

Appellant Teresa Ann Wilson ("Teresa") applied under 28 U.S.C.A. § 2254 (West 1994 & Supp. 1998) for relief from two drug conspiracy convictions in South Carolina state court, asserting that her Sixth Amendment right to counsel was abridged when one lawyer jointly represented her and her husband, and that she did not knowingly waive her right to be represented separately by her own attorney. In rejecting Teresa's arguments, the district court declined to consider belated evidence that she had been suffering the effects of domestic abuse at the time of her prosecution. This evidence, which Teresa contends would show her inability to participate independently in her own defense, was not presented to the state courts during post-conviction relief (PCR) proceedings; however, while her federal habeas application was pending, Teresa included this evidence in a petition for a writ of habeas corpus to the Supreme Court of South Carolina, which denied her petition without explanation in a one-sentence order.

The district court concluded that the South Carolina Supreme Court had disposed of Teresa's habeas petition on state procedural grounds and, therefore, had not considered the evidence. As a result, the district court also refused to consider it, taking into account only the evidence that had been before the state PCR court. Ultimately, the district court rejected Teresa's § 2254 application and granted summary judgment to the State.[1] On appeal, Teresa urges us to find that

_____

[1] The § 2254 application named as respondents Michael Moore, Commissioner, South Carolina Department of Corrections, and Charles M. Condon, Attorney General for the State of South Carolina. For ease of reference, we refer to respondents as "the State."

the South Carolina Supreme Court actually considered this evidence and disposed of her petition on the merits, and she suggests that the appropriate remedy is to return the matter to district court for reconsideration of her claims in light of this evidence.

We hold that the South Carolina Supreme Court rejected Teresa's habeas petition on state procedural grounds and, therefore, did not take into account Teresa's evidence of spousal abuse. Thus, in ruling on her claims for relief under § 2254, the district court properly refused to consider the new evidence. We conclude further that the district court correctly determined that Teresa's claims were without merit. Accordingly, we affirm.

I.

Teresa and her husband Ronnie Wilson ("Ronnie") were indicted in South Carolina state court on two counts of conspiring to traffic cocaine and marijuana and one substantive trafficking count. They retained a single attorney to represent them at their joint trial. At a pretrial hearing, the trial judge detailed at length the perils of joint representation, and specifically explained the difficulties that could arise when an attorney representing co-defendants attempted to plea bargain.[2] In fact, the trial judge urged the Wilsons to retain separate

_____

[2] The trial judge read to the Wilsons from a standard waiver form which provided, in part, the following:

> [W]hen one lawyer represents two or more defendants in any case, a lawyer may not be able to represent all of the defendants to the fullest extent of the law. This may create a conflict of interest which could deny one of the defendants the right to effective assistance of counsel. Each defendant has the right to have a lawyer who represents him and only him. And as you know, if you can't afford a lawyer, I will appoint one for you.
>
> ....
>
> This kind of conflict of interest can be dangerous to a defendant in a number of ways. The government might let a defendant who is not as involved as other defendants plead guilty to lesser charges than their other defendants.

J.A. 13-14.

3

counsel. Nevertheless, Teresa waived her right to separate counsel orally and in writing by signing a waiver form. **3**

Following a jury trial, the Wilsons were convicted on all three counts and sentenced to identical prison terms of twenty-five years. On direct review, the South Carolina Supreme Court affirmed the Wilsons' conspiracy convictions but vacated their substantive traf-

_____

The judge then elaborated on the problems presented by plea negotiations:

> [I]f you have a lawyer who represents more than one defendant, suppose the [State has] offered one of the defendants to enter a plea to a lesser offense or to work out some kind of real good deal with them in exchange for testimony.

> If you have got one lawyer representing two or more people, that lawyer may try to persuade that defendant not to plead guilty in order to protect ... the other person that that lawyer represents.... He might recommend that ... the deal is good, you go ahead and take it ... know[ing] then that that person is going to be testifying against his other client that he has got remaining.

J.A. 14.

**3** Following the trial court's lengthy comments on the dangers of joint representation, both Teresa and Ronnie indicated their assent:

> THE COURT: What about you, Mr. Wilson, what are your --

> MR. WILSON: I -- we -- I will go ahead -- That's fine with me.

> THE COURT: Both of you want to keep the same--

> MR. WILSON: Yes, sir.

> THE COURT: -- the same lawyer?

> MS. WILSON: (Nods head in the affirmative).

> . . . .

> THE COURT: . . . And, Ms. Wilson, I didn't ask you, but you concur with that?

> MS. WILSON: Yes, sir.

J.A. 19-20.

4

ficking convictions because of a jurisdictional infirmity. See State v. Wilson, 433 S.E.2d 864 (S.C. 1993).

Teresa then sought post-conviction relief (PCR) in South Carolina Circuit Court. See S.C. Code Ann. §§ 17-27-10 to -160 (Law. Co-op. 1985 & Supp. 1998). Primarily, Teresa contended that she was denied her Sixth Amendment right to effective assistance of counsel because her attorney represented both her and Ronnie even though they had disparate legal interests, and that she did not effectively waive her right to separate counsel because the nature of the potential conflict of interest was not adequately explained to her. [4] Teresa never suggested to the PCR court, however, that she was unable to knowingly waive her right to separate counsel because of chronic abuse,[5] i.e., Battered Woman Syndrome (BWS). Subsequently, the PCR court entered a written order denying post-conviction relief. The PCR judge rejected her Sixth Amendment claims, concluding that Teresa had been adequately informed of the problems intrinsic to joint representation but that she had waived her right to separate counsel. Teresa sought review of the PCR court's order of dismissal, but the South Carolina Supreme Court denied Teresa's petition for certiorari.

In April 1997, after obtaining new counsel, Teresa filed a § 2254 application in the district court.[6] She advanced two grounds for fed-

_____

[4] Additionally, Teresa argued to the PCR court that her counsel was ineffective for failing to adequately investigate possible defenses, and that she was unlawfully sentenced. She does not press these additional claims before us, however.
[5] During an evidentiary hearing conducted by the PCR court, Teresa testified that she suffered physical abuse by Ronnie, and her PCR counsel argued that the fact that she was a battered spouse "could have been explored in her defense had she had another attorney." J.A. 78. However, she did not suggest to the PCR court that the alleged domestic abuse rendered her unable to voluntarily waive a conflict of interest.

[6] Because Teresa's § 2254 application was filed after the April 24, 1996 enactment of the Antiterrorism and Effective Death Penalty Act (AEDPA) of 1996, Pub. L. No. 104-132, 110 Stat. 1214, the amendments to 28 U.S.C.A. § 2254 effected by the AEDPA apply. See Lindh v. Murphy, 521 U.S. 320 (1997); Green v. French , 143 F.3d 865, 868 (4th Cir. 1998), cert. denied, 119 S. Ct. 844 (1999).

5

eral habeas relief. First, she contended that she was denied effective assistance of counsel under the Sixth and Fourteenth Amendments because her attorney was hampered by a conflict of interest between Teresa and Ronnie. Teresa claimed that she played a minimal role in Ronnie's drug activities. Because of this perceived gap in culpability between her and Ronnie, Teresa argued that her attorney could not provide adequate joint representation. As a specific example of this alleged conflict of interest, Teresa highlighted a plea offer that the prosecutor extended to Teresa alone in exchange for her testimony. She believes that competent counsel would have recognized that her best interests conflicted with Ronnie's and thus would have advised her to obtain separate counsel. Teresa's second § 2254 claim was that she did not knowingly and voluntarily waive her right to separate counsel because she was suffering the effects of BWS and was unable to assess independently whether it would serve her best interests to retain her own attorney.

In support of her § 2254 application, particularly her second ground for relief, Teresa presented -- for the first time-- several affidavits attesting to the abuse she allegedly suffered at Ronnie's hands and a psychological report concluding that Teresa suffered from BWS before and during the trial. Thus, Teresa's § 2254 application rested in part on factual allegations that were never presented to the PCR court. It is undisputed that this newly presented evidence was available and could have been developed at the time Teresa filed her PCR application.

Teresa's § 2254 application was referred to a magistrate judge for a recommendation to the district court. After the State moved for summary judgment, the magistrate judge directed the parties to brief the issue of whether the newly submitted affidavits and psychological report could be considered. Before the magistrate judge issued a recommendation, however, Teresa returned to state court and filed a petition for a writ of habeas corpus in the original jurisdiction of the South Carolina Supreme Court. In this petition, Teresa advanced the same two grounds for relief that she raised in her § 2254 application: (1) that she was denied effective assistance of counsel because of the joint representation, and (2) that her "waiver of her right to conflict-free representation was the invalid product of battering, domination and abuse by her co-defendant." J.A. 188. In support of the petition,

6

Teresa submitted the same affidavits and psychological report that had been submitted for the first time in federal court.**7**

The State moved to dismiss the petition, urging the South Carolina Supreme Court to find that Teresa's claims were procedurally barred under state law. Without requesting that the State formally answer the habeas petition, the South Carolina Supreme Court then summarily denied the petition in a one-sentence order: "Petition for Habeas Corpus is denied." J.A. 221. The magistrate judge thereafter refused to consider the affidavits and the psychological report on BWS and recommended that the district court deny Teresa's § 2254 application.

The district court agreed with the magistrate judge's recommendation that Teresa be denied relief on her § 2254 application and granted summary judgment to the State. See Wilson v. Moore, 999 F. Supp. 783, 793 (D.S.C. 1998). With respect to the new factual grounds for relief, the district court concluded that the South Carolina Supreme Court had disposed of Teresa's petition for original habeas on state procedural grounds and thus had not considered the merits of her petition "in light of the new evidence." Id. at 790. Therefore, the district court concluded that because the state courts did not take into account Teresa's additional evidence in denying her collateral relief, it could not consider this evidence in reviewing her § 2254 application.**8** Turning to the merits of her Sixth Amendment claims, the district court held that the PCR court had correctly rejected Teresa's ineffective assistance claim and that Teresa effectively waived her right to separate counsel. See id. at 792-93.

_____

**7** Teresa's § 2254 application and her habeas petition to the South Carolina Supreme Court in its original jurisdiction were virtually identical. At oral argument, it was established that Teresa petitioned the South Carolina Supreme Court in a last-minute attempt to have the state courts consider the evidence.

**8** The district court also decided that Teresa was not entitled to an evidentiary hearing on this new evidence. See 28 U.S.C.A. § 2254(e)(2) (West Supp. 1998). Teresa does not challenge this conclusion on appeal.

7

II.

Teresa directs her argument primarily toward the district court's ruling that the South Carolina Supreme Court refused to reach the merits of her habeas petition and, therefore, did not consider her new evidence. Teresa contends that the "denial" language used by the state supreme court in its summary order, and "the practical necessity" of considering the merits in order to decide if it should exercise its original jurisdiction, demonstrate that the court indeed considered the evidence but rejected her federal claims on the merits. Therefore, she argues, there is no procedural impediment to consideration of this newly presented evidence by a federal habeas court. And, she insists, were the court to include the additional affidavits and the psychological evidence in its analysis, "the merit of appellant's Sixth Amendment conflict claim becomes unmistakable." Br. of Appellant at 10.

A.

Federal habeas courts may not consider a § 2254 claim if a state court disposed of the claim on adequate and independent state grounds unless the habeas applicant can demonstrate cause and actual prejudice or a "fundamental miscarriage of justice." Harris v. Reed, 489 U.S. 255, 262 (1989) (internal quotation marks omitted). Here, Teresa's claims that she received ineffective assistance of counsel because of a conflict of interest, and that she did not effectively waive her right to separate counsel, were unquestionably presented to the state PCR court, which disposed of the claim on the merits; thus, the district court was obliged to address these claims on the merits.

The question here is whether a federal court may consider evidence submitted in support of a § 2254 application if the state court refused to consider the evidence based on adequate and independent state grounds. In this case, Teresa's evidence that she suffered from BWS was not submitted to the PCR court as a factual basis for her claims. Rather, Teresa presented these allegations to the state court -- via a petition for a writ of habeas corpus in the South Carolina Supreme Court -- only after she had filed her § 2254 application in the district court.

The adequate and independent state ground doctrine, which precludes federal habeas courts from considering procedurally defaulted

claims, rests on principles of comity; "[i]t concerns the respect that federal courts owe the States and the States' procedural rules when reviewing the claims of state prisoners in federal habeas corpus." Coleman v. Thompson, 501 U.S. 722, 726 (1991). In the same way, a federal habeas applicant must develop the factual basis for a claim in state court to "accommodate concerns of finality, comity, judicial economy, and channeling the resolution of claims into the most appropriate forum." Keeney v. Tamayo-Reyes , 504 U.S. 1, 8 (1992). As the Keeney Court observed, "it is ... irrational to distinguish between failing to properly assert a federal claim in state court and failing in state court to properly develop such a claim." Id. at 7-8. Thus, because of these principles of federalism, the Court in Keeney concluded that the same cause-and-prejudice standard analyzed in Coleman should apply to factual bases that were not developed in state court as well as to claims that were not cultivated during state proceedings. See Keeney, 504 U.S. at 8-12. Teresa has made no attempt, however, to demonstrate cause and prejudice for her failure to present this evidence to the state PCR court. See Thomas v. Taylor, 170 F.3d 466, 1999 WL 140596, at *4 n.9 (4th Cir. March 16, 1999).

Accordingly, the district court could only consider this newly presented evidence on summary judgment if the state supreme court disposed of the habeas petition on the merits, which would require consideration of the new evidence. Conversely, if the state supreme court found the petition procedurally barred, and therefore did not consider the new evidence, the district court could not take the new evidence into account when considering Teresa's § 2254 claims. Cf. Ylst v. Nunnemaker, 501 U.S. 797, 801 (1991) ("State procedural bars are not immortal ... [i]f the last state court to be presented with a particular federal claim reaches the merits, it removes any bar to federal-court review that might otherwise have been available."). This much the parties agree upon.

B.

We turn, then, to the question of whether the South Carolina Supreme Court, in its original jurisdiction, ruled on the merits of Teresa's habeas petition and, therefore, necessarily considered the new evidence. Although the concept that federal habeas courts may not consider a § 2254 claim if a state court disposed of the claim on

9

adequate and independent state procedural grounds (absent cause and prejudice or a fundamental miscarriage of justice) seems easily grasped, this principle can be difficult to apply when the state court renders an ambiguous order or disposes of the claim in summary fashion. Harris addressed this problem by developing a presumption that "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar." Harris, 489 U.S. at 263 (internal quotation marks omitted). The presumption developed in Harris, however, does not apply unless "it fairly appears that a state court judgment rested primarily on federal law or was interwoven with federal law, that is, in those cases where a federal court has good reason to question whether there is an independent and adequate state ground for the decision." Coleman, 501 U.S. at 739. Therefore, only when the decision of the state court fairly appears to be grounded in federal law must "federal habeas courts ... conclusively presume that a state decision does not rest on an independent and adequate state ground, unless the state court's opinion contains a plain statement that [its] decision rests upon adequate and independent state grounds." Smith v. Dixon, 14 F.3d 956, 962 (4th Cir. 1994) (en banc) (internal quotation marks omitted) (alteration in original).

The rub comes in attempting to decipher the basis for an unexplained state order, i.e., in deciding whether a state court's summary disposition -- like the one-sentence denial at issue here -- "fairly appears" to rest on federal law or on an adequate and independent state ground. Fortunately, there are some general guideposts to direct our inquiry. First, federal habeas courts should simply look to the text of the state court's order for clues, see Skipper v. French, 130 F.3d 603, 611 (4th Cir. 1997), in particular whether the state order mentions federal law, see Coleman, 501 U.S. at 740; Smith, 14 F.3d at 963-64. Also, the language used by the state court in disposing of the claim may suggest a basis for the order. See Ylst, 501 U.S. at 802 (noting the use of "dismissed" rather than "denied" may be instructive). Second, federal habeas courts should consider the circumstances surrounding the entry of the state order. See id., 501 U.S. at 802; Smith, 14 F.3d at 964-69. For example, the federal habeas court's decision might be informed by examining whether the claims presented to the state court were subject to summary denial on proce-

10

dural grounds under state law, see Smith, 14 F.3d at 967, or whether the state court refused to conduct an evidentiary hearing, see id. at 968; see also Skipper, 130 F.3d at 611 (noting that it may be helpful to consider the procedural posture of the state decision and the motion papers submitted to the state court).

C.

Guided by these general precepts, we turn to consider whether the South Carolina Supreme Court's one-sentence order denying Teresa's petition for a writ of habeas corpus "fairly appears" to rest on federal law.

1.

The order of the South Carolina Supreme Court makes no mention of federal law. Teresa contends that this omission is not a meaningful clue as to the basis of the decision since the order does not mention state law either. Contrary to Teresa's position, however, the Supreme Court has made clear that the failure to mention federal law supports the conclusion that the state order "fairly appears" to rest on state law, even though the state order does not refer expressly to state law. See Coleman, 501 U.S. at 738 ("It is not necessarily the case that state courts will take pains to provide a clear and express statement of procedural default in all cases."). Actually, it has been readily apparent since Coleman that the lack of any mention of federal law is a significant indication that the state order does not rest on federal law. See id. at 740; Smith, 14 F.3d at 964 ("This failure is extremely significant in view of the importance the Supreme Court has placed on the necessity of a clear indication that federal law controlled the decision prior to applying the Harris presumption."); see also Jones v. Jerrison, 20 F.3d 849, 855-56 (8th Cir. 1994) (refusing to apply the Harris presumption to a one-sentence state order because the order did not refer to federal law). Accordingly, we conclude that the failure of the South Carolina Supreme Court to mention federal law strongly supports the conclusion that its decision does not fairly appear to rest on federal law. See Coleman, 501 U.S. at 740; Smith , 14 F.3d at 964 (finding "the failure of the summary order to refer to federal law ... compelling evidence that the summary order does not fairly appear to rest on federal law or to be interwoven with federal law").

11

2.

Teresa contends that the South Carolina Supreme Court's disposition of her petition -- a "denial" rather than a "dismissal" -- indicates that the court considered the merits of her petition or, at the least, gives us good cause to question whether the state order was founded upon an adequate and independent state ground.

We first note that although the use of "deny" or "dismiss" by the state court might provide a hint as to the basis for a state court's summary disposition, see Ylst, 501 U.S. at 802, federal habeas courts are not to conclude blindly that the summary "denial" of a habeas petition always and necessarily means the state court considered the merits of a claim, regardless of context, see Smith, 14 F.3d at 970 (explaining that in light of North Carolina law, the state court's "denial" did not necessarily indicate the state court considered the merits). Context is important. In Coleman, for example, the state supreme court's use of "dismissal" was significant because the order expressly indicated that the court was granting the State's motion to dismiss, which was based solely on procedural grounds. See Coleman, 501 U.S. at 740. Thus, use of "deny" or "dismiss" by the state court does not in and of itself conclusively tell us whether the state court's decision was based on the merits or on a state procedural rule.

Relying on three unpublished orders in which the South Carolina Supreme Court disposed of various habeas petitions, Teresa argues that the South Carolina Supreme Court has been careful to use the term "deny" when rejecting a habeas petition on the merits. We cannot agree. Indeed, one of the very orders upon which Teresa relies, Adams v. Moore, (S.C. Aug. 17, 1995) (unpublished order), illustrates the opposite point -- that the South Carolina Supreme Court attaches no particular meaning to the term "deny" as opposed to "dismiss." In the Adams order, the court expressly rejected one habeas claim on procedural grounds and the remaining claims on their merits. The court concluded that the habeas petition should be"denied" in its entirety, failing to distinguish between the procedurally barred claim and the claims which were rejected on the merits. See J.A. 234-36.

The second unpublished order of the South Carolina Supreme Court that Teresa relies upon is similar to the order in this case, pro-

12

viding in its entirety, "The petition for writ of habeas corpus is denied." Woomer v. State, (S.C. June 8, 1989) (unpublished order); see J.A. 239. However, we do not find the court's use of "denied" particularly telling. The State moved that the court clarify the basis of its order in Woomer so as to avoid the effect of the Harris presumption. The South Carolina Supreme Court denied the motion. Teresa suggests that the United States Supreme Court subsequently considered the merits of Woomer's habeas claims when it stayed the petitioner's execution while his petition for certiorari was pending, see Woomer v. Evatt, 491 U.S. 901 (1989) (mem.), but later denied certiorari, see Woomer v. Evatt, 494 U.S. 1060 (1990) (mem.). We do not read into the actions of the Supreme Court the meaning which Teresa commends to us. Further, the Woomer order was issued prior to the South Carolina Supreme Court's order in Adams in which the court "denied" habeas claims on both procedural and substantive grounds. Thus, even if the Woomer order was instructive, the South Carolina Supreme Court, since that time, has employed the term "denied" to dispose of claims on both procedural grounds and on the merits.[9]

We simply cannot discern a pattern in the South Carolina Supreme Court's use of "denied" as opposed to "dismissed" in disposing of habeas petitions on their merits or on state procedural grounds. Accordingly, we do not find the use of "denied" versus "dismissed" particularly instructive, and we reject Teresa's position that it requires the conclusion that her petition was rejected on the merits.

---------------------------------------------------------------

[9] Nor are we persuaded by Teresa's reliance on a third unpublished order of the South Carolina Supreme Court, which was reviewed by the United States Supreme Court even though the South Carolina Supreme Court had apparently "denied by summary order" a petition for a writ of habeas corpus in the court's original jurisdiction. See Yates v. Aiken, 349 S.E.2d 84, 85 (S.C. 1986), rev'd, 484 U.S. 211 (1988). It is not apparent from these decisions whether the order mentioned federal law or whether the surrounding circumstances provided guidance in discovering the basis of the order. Moreover, the Supreme Court's initial review of the summary order, see Yates v. Aiken, 474 U.S. 896 (1985), occurred prior to both Harris and Coleman.

13

3.

After examining the totality of the circumstances accompanying the entry of the state order, we conclude that the order fairly appears to rest on state procedural grounds, not federal law. Several considerations lead us to this conclusion.

As an initial matter, it is helpful to understand the nature of the relief Teresa sought when she made her belated return to state court during the course of her federal habeas proceedings. It is clear that Teresa's claims, which presented new factual grounds for relief, would have been barred had they been presented in a successive PCR application. The South Carolina Uniform Post-Conviction Procedure Act requires PCR applicants to present all of their claims and grounds for relief at the same time:

> All grounds for relief available to an applicant under this chapter must be raised in his original, supplemental or amended application. Any ground finally adjudicated or not so raised ... may not be the basis for a subsequent application, unless the court finds a ground for relief asserted which for sufficient reason was not asserted or was inadequately raised in the original, supplemental or amended application.

S.C. Code Ann. § 17-27-90 (Law. Co-op. 1985)."[A]s long as it was possible to raise the argument in his first PCR application, an applicant may not raise it in a successive application." Aice v. State, 409 S.E.2d 392, 394 (S.C. 1991). Teresa does not dispute that she did not present the new factual grounds for relief -- her alleged BWS -- to the PCR court. Therefore, Teresa clearly would be precluded from filing a successive PCR application that included her new grounds for relief.

Aware of the rule against successive PCR applications, Teresa instead sought a writ of habeas corpus from the South Carolina Supreme Court in its original jurisdiction. In South Carolina, the scope of habeas corpus relief has been greatly curtailed by the South Carolina Uniform Post-Conviction Procedure Act, which essentially displaced the relief that was previously available under the common law writ. See S.C. Code Ann. § 17-27-20(b) ("[The Act] comprehends

14

and takes the place of all other common law, statutory or other remedies heretofore available for challenging the validity of the conviction or sentence."); see also Simpson v. State, 495 S.E.2d 429, 430 (S.C. 1998). "[A] matter which is cognizable under the Act may not be raised by a petition for a writ of habeas corpus before the circuit or other lower courts." Simpson, 495 S.E.2d at 431 (emphasis added).

The South Carolina Supreme Court, however, retains its power under the state constitution to grant a writ of habeas corpus in its original jurisdiction. See id. at 431 n.4. But, this remedy is available only under the most extraordinary circumstances. The South Carolina Supreme Court, sitting in its original jurisdiction, will grant a writ of habeas corpus to correct only those infractions which "in the setting, constitute[ ] a denial of fundamental fairness shocking to the universal sense of justice." Butler v. State, 397 S.E.2d 87, 88 (S.C. 1990) (internal quotation marks omitted) (emphasis in original). At bottom, habeas relief exists in South Carolina for prisoners who, after exhausting all other means of relief, have "been utterly failed by [the] criminal justice system." State v. Torrence , 406 S.E.2d 315, 328 (S.C. 1991) (Toal, J., concurring).

Thus, Teresa sought an extreme remedy from the South Carolina Supreme Court based on grounds she agrees were available during her state PCR proceedings. Nevertheless, she argues that these new grounds for relief were not subject to dismissal on state procedural grounds because, she claims, the South Carolina Supreme Court's review of habeas petitions under the Butler "fundamental fairness" standard necessarily requires a merits determination. According to this argument, habeas petitions invoking the original jurisdiction of the South Carolina Supreme Court are free of procedural strictures and can never be rejected on procedural grounds under any circumstances. The South Carolina Supreme Court, therefore, would always be constrained to get into the merits of any habeas petition filed in the court's original jurisdiction. We think her argument goes too far.

It has long been the case under South Carolina law that habeas corpus "cannot be used as a substitute for appeal or other remedial procedure[s] for the correction of errors of law of which the defendant had an opportunity to avail himself." Tyler v. State, 145 S.E.2d 434, 436 (S.C. 1965). Thus, a prisoner may not disguise what is really a PCR

15

application by calling it a habeas petition. See Simpson, 495 S.E.2d at 431. This is so because South Carolina, like other jurisdictions, has a strong interest in promoting finality in the criminal justice system and in limiting the stream of attempts at collateral relief in any one case which often are "limited only by the imagination and creativity of skilled attorneys." Aice, 409 S.E.2d at 394. As the South Carolina Supreme Court has explained:

> Finality must be realized at some point in order to achieve a semblance of effectiveness in dispensing justice. At some juncture judicial review must stop, with only the very rarest of exceptions, when the system has simply failed a defendant and where to continue the defendant's imprisonment without review would amount to a gross miscarriage of justice.

Id. (citing Butler, 397 S.E.2d at 87). Therefore, "[h]abeas corpus is available only when other remedies, such as PCR, are inadequate or unavailable." Gibson v. State, 495 S.E.2d 426, 428 (S.C. 1998). And, in order to demonstrate that they are not executing an end-run around PCR procedures, state habeas petitioners must generally show that "PCR is unavailable, all other remedies have been exhausted, and the issues raised now could not have been raised in their prior PCR applications." Id. at 429.

Teresa's petition for habeas corpus to the South Carolina Supreme Court was nothing more than an attempt to file a second PCR application raising grounds for relief which she could have raised in support of her first PCR application. There was nothing extraordinary about the claims she raised in her habeas petition -- they were, in fact, identical to the claims she raised to the PCR court. Clearly, Teresa was unable to show that the issues raised in her state habeas petition could not have been raised in her prior PCR application, and therefore habeas relief -- an extraordinary remedy -- was inappropriate. See id. at 428. Because South Carolina eschews the use of habeas as a belated substitute for a previously denied PCR application -- which is certainly what happened here -- we conclude that Teresa's habeas petition did not afford the South Carolina Supreme Court the extraordinary reason necessary to exercise its original habeas jurisdiction. The fact that habeas relief was inappropriate is strong evidence that

16

the South Carolina Supreme Court did not consider Teresa's federal claims on the merits.

There are other considerations that bolster our conclusion that the circumstances surrounding the entry of the South Carolina Supreme Court's order suggest a procedural disposition. For one, the State urged the South Carolina Supreme Court to dismiss Teresa's habeas petition solely on procedural grounds. See Coleman, 501 U.S. at 740. The State argued that the claims raised in Teresa's habeas petition were based on factual grounds that could have been advanced in support of her original PCR application and were thus barred as successive under S.C. Code Ann. § 17-27-90. In essence, the State maintained that Teresa was simply invoking the court's original habeas jurisdiction as a substitute for other available, more appropriate forms of collateral relief under South Carolina law, which she was not permitted to do. The State's return did not in any way address the merits of the habeas petition.

This is particularly revealing in light of the procedural posture of the petition when it was rejected. The South Carolina Rules of Appellate Procedure provide as follows:

> A party seeking to have the Supreme Court entertain an action in its original jurisdiction (petitioner) shall serve on all other parties (respondents) a petition for original jurisdiction, a complaint setting forth the claim for relief. . . and a notice advising each respondent he has twenty (20) days from the date of service to serve and file a return to the petition. . . . Failure of a party to timely file a return may be deemed a consent by that party to the matter being heard in the original jurisdiction. . . . If the petition is granted, the respondent shall have thirty (30) days to serve and file an answer to the complaint. The Supreme Court may provide for discovery, fact finding and/or a briefing schedule as necessary.

Rule 229(c), SCACR (emphasis added).[10] Thus, a respondent need not

_____

[10] Teresa combined her petition for original jurisdiction and the complaint detailing her claims for relief.

17

even address the merits of a habeas petition unless the court first decides to exercise its original jurisdiction and grants the petition.

Here, the State filed a return to Teresa's petition urging the court not to exercise its original jurisdiction; it did not file an answer to the complaint addressing the merits of her claims. The State specifically noted this fact in its return: "Respondent will assume . . . that the Court does not reach the substance and merits of Petitioner's claim unless the Court actually requires Respondent to file an answer and provides for discovery pursuant to Rule 229(c), South Carolina Rules of Appellate Practice." J.A. 219. Because the court did not agree to hear the matter in its original jurisdiction, the State was not required to address the merits of the petition by filing an answer, nor did the court provide for any discovery or fact finding by the litigants. The court did nothing to suggest that it was considering Teresa's claims on their merits. On the contrary, the court's rejection of the petition without requiring a response from the State implies just the opposite -- that the court never reached the merits of the petition.

A procedural disposition of Teresa's petition is also consistent with the South Carolina Supreme Court's historical reluctance to exercise its original jurisdiction, especially when there are other potential avenues of relief for the petitioner:

> Although Article V, § 5, of the South Carolina Constitution vests this Court with the authority to issue extraordinary writs and entertain actions in its original jurisdiction, this Court's primary function is to act as an appellate court to review appeals from the trial courts. . . . [T]his Court has indicated it will not entertain matters in its original jurisdiction where the matter can be entertained in the trial courts of this State. Only when there is an extraordinary reason such as a question of significant public interest or an emergency will this Court exercise its original jurisdiction.

Key v. Currie, 406 S.E.2d 356, 357 (S.C. 1991); see also Rule 229(a), SCACR ("The Supreme Court will not entertain matters in its original jurisdiction when the matter can be determined in a lower court in the first instance, without material prejudice to the rights of the parties."). In view of the fact that Teresa's habeas petition is nothing more than

18

an attempt to revitalize her first PCR claim, we are convinced that the Supreme Court of South Carolina did not take the "extraordinary" step of exercising its original jurisdiction to review her petition on the merits.

In sum, the circumstances surrounding the entry of the state order, coupled with its failure to mention federal law, leave us convinced that the state supreme court did not visit the merits of Teresa's habeas claims. We conclude that the decision of the state court does not "fairly appear" to rest on federal law and, therefore, that the South Carolina Supreme Court's decision was premised on adequate and independent state grounds. It follows that the state court did not consider the evidence of Teresa's alleged BWS. Neither shall we.

III.

Having concluded that the district court correctly refused to consider the evidence of Teresa's alleged BWS, we turn to the merits of her § 2254 application in light of the factual grounds that were presented to the PCR court. Section 2254(d) prohibits federal habeas relief on any claim "adjudicated on the merits in State court proceedings," unless the state court's decision was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C.A. § 2254(d)(1)-(2). Thus, federal habeas relief is authorized under § 2254(d)(1) when the "state court decision is in square conflict with a precedent (supreme court) which is controlling as to law and fact." Green v. French, 143 F.3d 865, 870 (4th Cir. 1998), cert. denied, 119 S. Ct. 844 (1999). In the absence of such a controlling precedent, the applicant must demonstrate either that "the state court's resolution of a question of pure law rests upon an objectively unreasonable derivation of legal principles from the relevant supreme court precedents," or that the state court's decision "rests upon an objectively unreasonable application of established principles to new facts." Id. In essence, "habeas relief is authorized only when the state courts have decided the question by interpreting or applying the relevant precedent in a manner that reasonable jurists would all agree is unreasonable." Id.

19

Teresa asserts two claims in her § 2254 application. First, she raises a claim of ineffective assistance of counsel, contending that her attorney was inhibited by a conflict of interest in light of his joint representation of her and her husband. Second, she claims that she did not knowingly and voluntarily waive her right to separate counsel. In considering these claims, the state PCR court found that Teresa effectively waived her right to separate counsel. Although the PCR court noted that Cuyler v. Sullivan, 446 U.S. 335, 350 (1980), requires a defendant to demonstrate that counsel actively represented conflicting interests in order to establish an ineffective assistance claim, the order of dismissal issued by the PCR court did not expressly determine whether Teresa's counsel had an actual conflict of interest.

The district court concluded that the performance of Teresa's counsel was not hampered by an actual conflict of interest and, therefore, that the PCR court correctly rejected this claim. With respect to the waiver issue, the district court determined that, even if an actual conflict existed, Teresa waived her right to separate counsel.

A.

We consider first whether the PCR court's determination that Teresa waived her right to separate counsel rests upon an application of "the relevant precedent in a manner that reasonable jurists would all agree is unreasonable." Green, 143 F.3d at 870. Although a criminal defendant has a Sixth Amendment right to conflict-free counsel, this right may be waived so long as the waiver is knowing, voluntary, and intelligent. See Gilbert v. Moore, 134 F.3d 642, 653 (4th Cir.) (en banc), cert. denied, 119 S. Ct. 103 (1998). After considering the testimony of Teresa and her counsel, the PCR court concluded "that counsel informed the Applicant of the hazards of representing co-defendants and received assurance from both the Applicant and her husband that they had no reservations concerning counsel's dual representation." J.A. 111. Factual findings by the state court are presumptively correct. See 28 U.S.C.A. § 2254(e)(1). Moreover, as detailed above, the record indisputably demonstrates that the state trial judge thoroughly explained the difficulties created by joint representation and even advised the Wilsons to retain separate counsel. In fact, the trial judge even warned the Wilsons to anticipate the possibility that an attorney representing co-defendants might be hampered

20

in attempting to negotiate a plea arrangement, which turned out to be Teresa's chief complaint. Yet, Teresa indicated her assent to the arrangement, both orally and in writing.

It seems quite clear that Teresa's waiver was knowing and intelligent. Prior to signing the waiver form, she was alerted by the trial judge to virtually every latent danger that could arise before or during the course of the trial. The trial judge explained the concept of "conflict of interest" and made the Wilsons aware that one of them could very well end up testifying against the other. Cf. Hoffman v. Leeke, 903 F.2d 280, 289 (4th Cir. 1990) (finding waiver was not knowing because defendant was never told the meaning of conflict of interest or that his co-defendants might testify against him). In light of the evidence before the PCR court, Teresa has pointed to nothing that indicates her decision to use the same lawyer as her husband was not a knowing and voluntary decision. See Gilbert , 134 F.3d at 653 (noting that the habeas petitioner bears the burden of demonstrating that the waiver was not voluntary).

In view of the factual determination by the PCR court and the lengthy pretrial hearing before the trial judge addressing the waiver issue, we cannot conclude that the PCR court, in holding that Teresa effectively waived separate counsel, applied the relevant precedent in a manner that reasonable jurists would all agree is unreasonable. See Green, 143 F.3d at 870.

B.

Even if we believed the state court unreasonably determined that Teresa waived her right to separate counsel, she would still not be afforded any relief because we agree with the district court that her counsel's performance was not adversely affected by an actual conflict of interest.

In order to establish an ineffective assistance of counsel claim based on a conflict of interest, a federal habeas applicant must first show that an actual conflict of interest exists. See Cuyler, 446 U.S. at 348. Since joint representation does not amount to a per se constitutional violation, merely demonstrating a potential conflict of interest will not suffice. See Gilbert, 134 F.3d at 652. An actual conflict exists

21

when the defendants' "interests diverge[d] with respect to a material factual or legal issue or to a course of action." Id. (internal quotation marks omitted) (alteration in original). Second, the habeas applicant must demonstrate that the conflict of interest adversely affected counsel's performance. See Cuyler, 446 U.S. at 350. The adverse performance requirement is satisfied "if the attorney took action on behalf of one client that was necessarily adverse to the defense of the other or failed to take action on behalf of one because it would adversely affect the other." Williams v. French, 146 F.3d 203, 212 (4th Cir. 1998), cert. denied, 119 S. Ct. 1061 (1999). Prejudice is presumed and the applicant is entitled to relief, however, if these showings are made. See Gilbert, 134 F.3d at 652.

Because the PCR court made no express determination of whether the Wilsons' trial counsel labored under an actual conflict of interest -- making the basis for its application of federal law to this issue unclear -- the district court conducted a de novo review of the issue. See Cardwell v. Greene, 152 F.3d 331, 339 (4th Cir.), cert. denied, 119 S. Ct. 587 (1998) (explaining that "the distinction between de novo review and `reasonableness' review becomes[in]significant" when the state court does not offer any rationale for its ruling).

Teresa argues that an actual conflict became apparent when Teresa was offered a plea bargain of seven to twenty-five years; Ronnie was offered no such deal. She contends it was clearly in her best interest to pursue a plea arrangement, including the possibility of cooperating against Ronnie. Because of her attorney's duty of loyalty to Ronnie, she claims, this option was not vigorously pursued. However, Teresa's trial counsel provided unrefuted testimony at the PCR hearing that, when he presented Teresa with the plea bargain-- which he negotiated with the prosecutor -- she and Ronnie both rejected the idea of Teresa receiving any jail time. According to counsel, Ronnie was prepared to plead guilty as long as Teresa would avoid doing a prison sentence. As the district court noted, Teresa's failure to obtain a plea bargain was, in large part, the result of her desire to avoid prison, which was unrealistic in light of the abundant evidence linking her to the drug conspiracy. In any event, we perceive no actual conflict under the circumstances.

Moreover, the testimony during the PCR hearing made clear that Teresa and Ronnie did not have antagonistic positions with respect to

22

any factual or legal issues. Counsel testified that Ronnie consistently maintained the position that Teresa was not involved in the conspiracy; that neither of them had a good factual defense to the conspiracy charges; and that the best defense for both of them was legal in nature.

We conclude that Teresa has not demonstrated that her attorney's performance was adversely affected by an actual conflict, and we therefore reject her claims for federal habeas relief.

IV.

For the foregoing reasons, we conclude that the state courts of South Carolina, in rejecting Teresa's Sixth Amendment claims, did not consider the evidence of her alleged physical abuse. Accordingly, we will not consider it either. Having found her claims to be without merit, we affirm the district court's denial of her§ 2254 application.

AFFIRMED

23